We'll hear oral argument now in the case of United States v. Brown. General. Good morning, your honors. May it please the court. Mr. Mitchell. Yes, Gregory Mitchell on behalf of Mr. Deshaun Brown. If I can, Judge, I'd like to first talk about the context of this appeal, specifically with respect to the sufficiency of the evidence argument. As outlined in the brief, Mr. Brown was arrested in October of 2013. Three weeks before that, he had been shot five times on Keystone Avenue in his front yard by what was suspected to be, or at least with the approval of, Nate Hoskins, who was taking over the area of Keystone Avenue and the drug dealing there. No dispute whatsoever in that regard. There was no doubt and there's been no dispute with respect to Mr. Brown being a drug dealer on Keystone Avenue at 1129 Keystone, which is the place where he lived, the place that he had been arrested from before, the place that had been searched, and that he was part of a street gang called the Mafia Insane Vice Lords that his uncle had brought him in as a child, and he specifically worked with the Mafia Insane Vice Lords who sell drugs of cocaine in front of his house on the east side of the street. The indictment in this case clearly acknowledged that the Keystone drug market as it was categorized in the indictment in the RICO count was a conspiracy racketeering enterprise run and controlled by what they call the double I, the Imperial Insane Vice Lord, a separate and distinct adversarial representation with the Mafia Insane Vice Lords. In fact, Mr. Brown was not charged as part of the RICO of the double I's in count one. However, in count nine, which was the conspiracy, he was alleged to be part of it, and specifically what he was alleged to be part of by naming the co-defendants was he made street-level sales of controlled substances at the Keystone drug market. The trial in this case and all of the evidence was presented was to simply define what was the Keystone drug market, when was it established, who ran it, and where were the drugs sold as part of that conspiracy for the Keystone drug market. Mr. Brown indicated that yes, I sold drugs on Keystone Avenue in front of my house as a Mafia Insane Vice Lord, and I got my drugs from people that had nothing to do with the double I Imperial Insane Vice Lord. In fact, when I began to get pressure to not sell drugs, not to sell drugs for the Imperial Insane, but not to sell drugs at all, he called his leaders of the Mafia Insane to put pressure on the Imperial Insane Vice Lords to stop it. Counsel, I'm puzzled by this line of argument. It sounds like you're making a closing argument to a jury, but that's not our function. You want to consider our standard of appellate review of an argument of this sort? Well, this is the issue. As I point out in my brief, the real question for this, the whole crux of this, is what was the meaning of the jury's verdict? My position on the appeal is with respect to your case in 2015, on the Pugar case, when it talks about here we are, where the evidence basically indicates that there's two interpretations of the exact same evidence. If that's the case, then the beyond the reasonable doubt standard could not have possibly been met, and therefore the conspiracy conviction, in my opinion, should have been reversed. What I'm outlining here, Judge, is what was presented to the jury with respect to the evidence. The evidence was, at trial, was that somehow that the Mafia Insane Vice Lords and the Imperial Insane Vice Lords were sort of the same thing. There was evidence about a Shabazz, which I outlined in my brief. But yet, when it came time for the jury verdict, the difference was, if it was part of one major operation, then Mr. Brown was charged with being a conspiracy to sell heroin, cocaine, and marijuana. And the jury verdict specifically denied or refused to find him guilty of any sales as part of the conspiracy for heroin, which was part of the double-I, Joseph Faulkner, Racketeering, Keystone drug market that began in the conspiracy in 1996 through 2013. The only part of the jury verdict came to cocaine, which Mr. Brown had agreed and admitted that he had sold cocaine as part of the Mafia Insane Vice Lord. So the question for this court, with respect to the test, is whether or not the standard for conspiracy was met given the fact that the jury decided that he was not part of the Joseph Faulkner conspiracy. Now it sounds like you're trying to make an argument about inconsistent jury verdicts. And as you know, the Supreme Court says in criminal cases there's no such contention. You can't assume that one verdict was right and then use that to argue that the other verdict was wrong. It's just a non-argument in a criminal prosecution. That's the holding of Powell. Well, that would be true if, in fact, the evidence that was presented with respect to conspiracy... The only argument you can make is about the evidence on the count of conviction. But you can't make an argument that some other jury verdict should be taken as the truth and extended to some other count. The Supreme Court says no. Well, that's not the context of my argument, Your Honor, and I understand that what I was looking at in terms of trying to establish the standard with Avila, and essentially Avila puts down a three-part test, as you know, that essentially two individuals don't conspire together if they have two separate objectives, two separate ends, the fact that they're doing something that's similar if they're not working together for the same odd. Right. And I gather you are not contending that the jury instructions on that issue were deficient. The jury was told that. Well, that's the second issue, Judge, because my theory of defense was that by the time the jury was asked to decide the issue of conspiracy, the question was, what was the relationship between Mr. Brown and Mr. Hoskins? The argument that the defendant had made and was made in his post-arrest statement was that I was being forced to pay a street tax. That instruction was denied, and therefore that issue could not be argued to the jury to determine his relationship, and therefore the agreement. Thank you, Mr. Mitchell. Thank you, Judge. Mr. McLeese. Good morning, Your Honors. May it please the Court, my name is Richard McLeese, and I represent Gregory Hawthorne, one of the three defendants who went to trial in this particular trial. Your Honors, this Court should reverse Mr. Hawthorne's conviction because the district judge's decision denying our post-trial Grady motion is riddled with errors. And in my time this morning, subject, of course, to the wishes of the Court, I intend to focus on three types of errors that the judge made in denying our Grady motion. The first, I submit, is that the judge asked the wrong question. It is true that, as the government notes in passing, the judge did refer to the reasonable probability standard. But if you look at how the judge then reviews and analyzes the evidence, it's quite clear, I submit, that she did not, in fact, apply that standard because her analysis is indistinguishable from the analysis that one might apply if the issue were the legal sufficiency of the evidence. She reviews Darrell Pitt's testimony, another cooperator, and says, look, he says Hawthorne said this, Hawthorne said this, and so forth. She reviews a police officer's testimony about an unwritten statement that Hawthorne allegedly made. And after reviewing all of this evidence in the light most favorable to the government, she basically says, this supported the verdict, therefore you're not entitled to Brady relief. And the problem with that is that the Supreme Court's decisions, as well as decisions by this court, make it clear that the appropriate test is not an outcome determinative test. The question is not whether, even if the government had satisfied its constitutional obligation of disclosure, the verdict might have been the same. We don't contest that. The question is whether there is any reasonable probability that the verdict could have been different. And she never addresses that question. Relatedly, and this is the second flaw in the judge's decision, she relies repeatedly on baseless assumptions and non sequiturs. With respect to the testimony of Darrell Pitt, for example, her analysis, which is a little over a page, assumes that all 12 of the jurors found him to be a trustworthy and reliable witness. What basis is there in the record for that assumption? None. She does the same thing with the testimony of the one Chicago police officer who testified about supposed custodial admissions that Hawthorne had made, who not only didn't record the interview, but didn't even obtain a written statement signed by Mr. Hawthorne. So all the jurors had was this officer's say-so as to what happened. And there, too, she assumes that all 12 jurors found him to be credible and reliable. Again, there's no basis for that. There's also no basis for the assumption that underlies her entire discussion that all 12 of these jurors would necessarily have viewed the evidence the same way and followed the same path to a verdict of guilt. There is no basis in the record, nor I believe I submit in common sense, to think that such a simplistic and reductive approach to jury deliberations would apply here, particularly given the fact that the jurors split on the conspiracy count as to Mr. Hawthorne finding him not liable on the cocaine dimension and also hung on the gun charge. With respect to non-sequiturs... Maybe that had something to do with his confession. He confessed to trafficking in heroin, right? Well, that is what the government's evidence was, that he confessed. Well, right, and the jury's entitled to accept that. So maybe that's what accounts for the acquittal on one drug type and the conviction on the other. Yes. If the jurors did credit to some extent his statement to the police officer about having sold heroin for Joe Faulkner back in 2000, which is what was discussed in the so-called confession, that only highlights the importance to this case of the testimony of Charles Vaughan, who was the individual as to whom the impeachment evidence was not disclosed, because Charles Vaughan was the only witness who testified on the basis of personal knowledge about the early days of the charge conspiracy, which began in 1996. He was the only witness who testified from personal knowledge about Joe Faulkner's heroin operation. And so, Your Honour, I submit that it would have been entirely proper for a juror to say, OK, well, I'm not sure about this confession because there's no recording of it, but if you couple that with Charles Vaughan's testimony, which supports the proposition that Faulkner indeed was running a lucrative drug operation in that way, then that provides some corroboration for it. And that is part of the problem with the judge's analysis, is that she finds that the jurors could have found Hawthorne guilty without relying on Vaughan's testimony, but that's not the question. The question is whether there's a reasonable probability that any of the jurors would have relied on Vaughan's testimony in finding Hawthorne guilty. And one of the areas in which I submit they would have, a reasonable juror could have relied on Vaughan's testimony,  as to Joe Faulkner's heroin operation. The other way in which Faulkner was indispensable is that the government charged a 17-year conspiracy. It is, of course, essential as the first step of proving a conspiracy that the government prove the existence of the charged conspiracy. Darryl Pitts, whom the judge talks so much about, was only on the scene for, according to his testimony, six months. What did Vaughan pin on your client? What did Vaughan pin on my client? Let me back up a second. He said he's a member of the gang. He said he's a member of the gang. He said he never saw him sell drugs. That's correct. But what he did say is that Joe Faulkner was operating this drug market at that time, which provided the only basis for supporting Hawthorne's testimony. The other thing that's important about Vaughan, and this is noted in my reply brief at page 6, is that Vaughan was used by the government in closing argument as the sole basis for tying Hawthorne's 2008 sale of a small quantity of drugs to an undercover cop to the charged conspiracy, as opposed to it being simply an isolated act of drug dealing. Vaughan was explicitly referred to by the government in closing argument as a basis for tying that to the conspiracy. So the problem with the judge's approach to this issue, as well as the government's approach, is that it misleads by omission, because a witness does not have to say, he did this, he did that, he did that, in order to be potentially important in the prosecution of an individual. If he provides evidence that, according to the government, links the individual to the conspiracy by providing evidence about Joe Faulkner and the charged conspiracy, he can be certainly potentially important. Thank you, counsel. Thank you, Judge. Mr. Redenfield. Thank you. May it please the Court, Scott Redenfield for the United States. And I would like to start with Deshaun Brown. The argument that the Court heard a moment ago is the same that was made to a properly instructed jury, and the jury, of course, found that Deshaun Brown guilty of the charged conspiracy. And what was charged in Count 9 of the indictment was a conspiracy to traffic drugs. And there was evidence introduced throughout trial that Deshaun Brown participated substantially in that conspiracy. The evidence was that Mr. Brown, at the beginning, was part of the original leader of that conspiracy, and that Mr. Brown sold heroin, essentially acting as a manager for the leader of that conspiracy. He sold that leader's heroin. The testimony was that Mr. Brown was paid either in a salary or a commission for that, that he was tasked specifically with making sure that the workers didn't get caught with drugs to make sure that the police didn't come around. The evidence at trial further about Mr. Brown was that at a point in time when the leadership of that conspiracy changed, Mr. Brown's role changed. Instead of selling heroin that was provided by the leader, he began to sell crack cocaine that he was obtaining from another source. And Mr. Brown was paying for that. He was paying both in drugs and in money for the right to sell at the Keystone drug market. And what the defense has argued is that that's simply not enough to support the jury's verdict. But when looking at the evidence in the light most favorable to the government, there's of course that and there's far more. We also know from the evidence that Deshaun Brown was selling drugs with PAC workers, that he was sharing those PAC workers with other conspirators. We know that there were times when Deshaun Brown would essentially mine the store for those other conspirators. He would sell their drugs while they went away. They would do the same for him. We also know from the evidence that Deshaun Brown would ask other conspirators for help in finding supply and that he, on occasion, would provide drugs to them at cost and vice versa. So all those things, Your Honor, we would submit support the jury's verdict that Deshaun Brown was a member of that charged conspiracy. I assume there was background evidence, too, about the operation at this Keystone open-air drug market that nobody sells there without being... There was, Your Honor. ...granted permission from the guy at the top. There was, Your Honor. There was testimony from both Charles Vaughn and Daryl Pitts that you couldn't sell at the Keystone drug market unless you had permission. You either were an imperial and sane vice lord or had the permission of the imperial and sane vice lords. And because Deshaun Brown was not a member in the later period of that conspiracy, that's exactly what he was doing. He was paying for the ability to sell drugs at that drug market. Moving on to Mr. Hawthorne, I would submit, Your Honor, that in reviewing what the court said and making its decision, the court was well aware of what the rule was and what the rule is. The court stated at the outset of its decision that there has to be a reasonable probability that had the information been disclosed, the result of the proceeding would have been different. The court then goes on immediately to state the alternate formulation of that, asking, does the newly disclosed evidence undermine confidence in the trial? And then the court really went through the analysis that if you look at what Charles Vaughn said, and we assume for the sake of argument that Charles Vaughn was completely and thoroughly discredited or would have been by this additional evidence, is there a reasonable probability that it would have made a difference in the trial? And Your Honor asked in the defense, and I'm sorry, in the appellant's argument, what exactly did Charles Vaughn say? And as the district court said, he didn't say very much during the course of an almost two-week trial. He stated that he hadn't seen Hawthorne selling with Faulkner. Charles Vaughn testified that he had never seen Hawthorne Keystone, and he testified about one particular occasion in which he observed a conversation between Julian Martin and Gregory Hawthorne about crack cocaine, which is interesting when you look at the defense's point, well, shouldn't we look at the jury verdict and about crack cocaine? The most implicating thing that Charles Vaughn says is about crack cocaine, but as counsel pointed out a moment ago, there was no conclusion by the jury as to crack cocaine. So I think it's clear from the record that what the trial court did was go through and determine that in looking at what Charles Vaughn said and comparing it to the other things that were said at trial, there was simply the conclusion that there is not a reasonable probability that the result would have been different had the information about Charles Vaughn been disclosed earlier is correct, and for that reason, we would ask the court to conclude that the trial court did not abuse its discretion when it denied Mr. Hawthorne's motion for a new trial, and that the trial court correctly determined that there was sufficient evidence and also properly concluded that the jury instructions proffered by Mr. Brown should not have been given. Thank you very much. The case is taken under advisement.